OPINION
{¶ 1} Appellant, Franklin County Children Services ("FCCS"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, dismissing its motion requesting an award of permanent custody of G.B. For the following reasons, we affirm that judgment.
 {¶ 2} On September 12, 1997, G.B. was born to Michelle W. and Lester B.[1] The two were living together in Lester B.'s home, but were not married. FCCS first became involved with G.B. when it filed a dependency complaint in January 1999 based on allegations that Michelle W. and Lester B. gave G.B. an alcoholic beverage in a bottle. G.B. was found to be a dependent child and initially removed from Lester B.'s home. As a result, FCCS prepared a case plan to facilitate the reunification of G.B. with Lester B. The case plan required Lester B. to undergo drug, alcohol, and mental health counseling, psychological and sexual assessments, and to provide for G.B.'s basic needs. Although G.B. was later returned to Lester B.'s home, FCCS again took temporary custody of G.B. in 2000 when Lester B. was assessed as being at the low end of the high risk scale to sexually re-offend and failed to complete portions of his case plan. G.B. has not returned to Lester B.'s home since that time.
 {¶ 3} G.B. is currently almost eight years old and has spent a majority of those years in a number of different foster homes. She suffers from a number of psychological and behavioral conditions, including depression. She has intense concerns with control, safety, taking instruction, and attachment. She acts out these concerns sexually, with activities ranging from masturbation to inappropriate sexual activity with other children. She undergoes weekly counseling appointments and takes medications to calm her behaviors. She also has a slight learning disability that impairs her motor skills.
 {¶ 4} On April 13, 2001, FCCS moved, pursuant to R.C. 2151.413, for an award of permanent custody of G.B. After a hearing, the trial court dismissed FCCS' motion for permanent custody. The trial court determined that FCCS failed to prove by clear and convincing evidence that a grant of permanent custody would be in G.B.'s best interest. Accordingly, the trial court ordered G.B. to be returned to her father.
 {¶ 5} FCCS appeals, assigning the following errors:
Assignment of error number one
The decision of the trial court denying fccs motion for permanent custody was against the manifest weight of the evidence. Based on the state of the evidence, this court should grant the motion for permanent custody.
Assignment of error number two
The court erred by finding that appellee Lester B. Had completed his case plan. Lester B. and Michelle W. Failed to complete the case Plan. The court erred by failing to make a finding that the children cannot or should not be placed with the parents as per R.C. 2151.414(E). Thus, the judgment of the trial court is against the manifest weight of the evidence.
Assignment of error number three
The trial court erred in denying the motion for permanent custody filed by franklin county children services in that the trial court failed to state that the court considered the recommendation of the guardian ad litem and failed to consider that other children of the parents were placed for adoption.
Assignment of error number four
The trial court erred in failing to find that permanent custody is in the best interest of G.B. Thus, said finding that permanent custody in not in the best interest of G.B. is against the manifest weight of the evidence.
Assignment of error Number Five
The court committed plain error by admitting evidence and testimony of the Polygraph Examiner. Children services was prejudiced by the admission of the testimony of the polygraph examiner and the judgment of the trial court should be reversed.
 {¶ 6} For ease of analysis, we will address FCCS' fifth assignment of error first. Therein, FCCS contends the trial court committed plain error by admitting the results of Lester B's polygraph examination. We disagree.
 {¶ 7} In 1984, Lester B. pled no contest to a charge of sexually abusing his son. During these proceedings, Lester B. steadfastly denied anything improper occurred and claimed that his wife fabricated the charge. He testified that he only pled no contest based on advice from his counsel. Due to his conviction, FCCS required Lester B. to undergo a sex offender assessment and take part in any recommended sex offender counseling. Lester B. took a sex offender assessment but refused to take part in sex offender counseling because he denied having committed a sexual offense. To allay his concerns, FCCS found a counseling program for him to attend for people who denied their participation in sexual offenses. Lester B. completed the counseling portions of that program. He refused, however, to complete the program's final requirement of a polygraph examination. The examination results would aid the program in determining whether or not Lester B. needed to undergo further sex offender counseling.
 {¶ 8} With the hearing date for FCCS' motion for permanent custody nearing, Lester B. took a polygraph examination concerning the 1984 conviction. The examination was not done, however, in conjunction with Lester B.'s participation in his sex offender counseling. The examination was independently conducted by Wesley Bailey, a licensed polygraph examiner who administers polygraph examinations for state agencies in Ohio, including the sex offender program in which Lester B. was enrolled. Bailey testified that he followed the same polygraph examination procedures for Lester B. as he would have done had he given him the polygraph examination through sex offender counseling. The results of the polygraph examination indicated that Lester B. was truthful in his denial of having done anything sexual with his son. Bailey testified that the accuracy of polygraph examinations range from 75-80 percent to as high as 98 percent. The trial court relied on the results of the polygraph examination in its custody analysis and concluded that Lester B. substantially completed the sex offender counseling required in his case plan.
 {¶ 9} In Ohio, the results of polygraph examinations are not admissible unless both parties stipulate that an accused will take a polygraph examination and that the results will be admissible. State v.Jamison (1990), 49 Ohio St.3d 182, 190; State v. Jackson (1991),57 Ohio St.3d 29, 37; Toohill v. Toohill (Aug. 18, 2000), Greene App. No. 99CA-138. Here, the parties did not stipulate to the admission of the results of Lester B.'s polygraph examination. However, FCCS did not object to the admission of the results of the polygraph examination at trial. Accordingly, it has waived all but plain error. Cf. State v.Kasser (Nov. 29, 2001), Franklin App. No. 01AP-260 (failure to object to admission of hearsay testimony waives all but plain error). In appeals of civil cases such as this, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. Goldfussv. Davidson (1997), 79 Ohio St.3d 116, syllabus; In re McLemore, Franklin App. No. 03AP-714, 2004-Ohio-680, at ¶ 11.
 {¶ 10} In the case at bar, any error associated with the admission of the polygraph examination results did not affect the basic fairness, integrity, or public reputation of the judicial process itself. It is undisputed that FCCS required Lester B. to undergo a sex offender assessment and to take part in a sex offender counseling program. FCCS found a counseling program for people who denied committing a sexual offense. Completion of that program required the participant to submit to a polygraph examination.
 {¶ 11} Although Lester B. did not submit to a polygraph examination in the context of the counseling program, he did ultimately submit to an independent polygraph examination conducted by Wesley Bailey, a licensed polygraph examiner, who administers polygraph examinations for state agencies in Ohio, including the program in which Lester B. was enrolled. Bailey testified that he followed the same polygraph examination procedures for Lester B. as he would have done had he given him the polygraph examination through the counseling program. The results of the polygraph examination indicated that Lester B. was truthful in his denial of having done anything sexual with his son.
 {¶ 12} Given that it was FCCS that required Lester B. to participate in the counseling program which required a polygraph examination, we fail to see how the admission into evidence of the polygraph results negatively affected the basic fairness, integrity or public reputation of the judicial process. Lester B. simply complied, albeit belatedly, with FCCS's request. Therefore, we conclude that any error associated with the introduction into evidence of the polygraph results did not give rise to plain error and appellant's fifth assignment of error is overruled.
 {¶ 13} We now turn to FCCS' remaining assignments of error. Preliminarily, we note that a decision to award permanent custody requires the trial court to take a two-step approach. First, a trial court must find whether any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(1).
 {¶ 14} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in the child's best interest. Id. In determining the best interest of a child, a trial court is required to consider all relevant factors including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 15} In connection with the first step in this analysis, FCCS contends in its second assignment of error that the trial court erred when it failed to find that G.B. cannot be placed with her parents pursuant to R.C. 2151.414(B)(1)(a). We disagree. Under the applicable statutory scheme, the trial court must first determine if one of the four circumstances described in R.C. 2151.414(B)(1) apply before it can move to the second step of its analysis. It is the trial court's role to decide which, if any, of the four circumstances apply based upon the evidence presented at the hearing. In deciding to proceed under R.C.2151.414(B)(1)(d) in its custody analysis, the trial court noted the extended length of time G.B. has been in FCCS' temporary custody. The record establishes that G.B. had been in FCCS' temporary custody for more than 12 months out of a consecutive 22-month period.[2] Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in the temporary custody of a children services agency for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not engage in the R.C. 2151.414(B)(1)(a) analysis of whether the child can or should be placed with either parent within a reasonable time. In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205, at ¶ 46; In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 49. Because the record supports the trial court's decision to proceed under R.C. 2151.414(B)(1)(d), no finding under R.C. 2151.414(B)(1)(a) was necessary. Williams, at ¶ 68; In re K. K.H., Cuyahoga App. No. 83410, 2004-Ohio-4629, at ¶ 31; In re Decker (Feb. 13, 2001), Athens App. No. 00CA042. Accordingly, FCCS' second assignment of error is overruled.
 {¶ 16} FCCS argues in its third assignment of error that the trial court erred by failing to consider in its best interest analysis the guardian ad litem's recommendation and Lester B's. loss of other children to adoption. We disagree.
 {¶ 17} The guardian ad litem recommended an award of permanent custody to FCCS. In its discussion of Lester B.'s reluctance to take a polygraph examination, the trial court noted that Lester B. could do nothing to change the mind of the guardian ad litem (presumably that the guardian ad litem was opposed to reunification). Although the trial court did not expressly state in its decision what the guardian ad litem recommended, it was obviously aware of the guardian ad litem's recommendation. A trial court is not required to specifically enumerate each factor under R.C.2151.414(D) in its decision. In re Heyman (Aug. 13, 1996), Franklin App. No. 96APF02-194. However, there must be some indication on the record that all of the necessary factors were considered. Id.; In reHershberger, Allen App. No. 1-04-55, 2005-Ohio-429, at ¶ 28. In the present case, the trial court stated in its opinion that it considered all the necessary factors in making its best interest determination. Given the trial court's obvious knowledge of the guardian ad litem's recommendation, coupled with its statement that it considered all the necessary factors in its best interest analysis, we conclude that the trial court did consider the guardian ad litem's recommendation in its best interest analysis.
 {¶ 18} FCCS also contends the trial court erred when it failed to consider that Lester B. had other children placed for adoption, a factor set forth in R.C. 2151.414(E)(11). We disagree. Years ago, Lester B. had two children with another woman in Texas. Apparently, Lester B. moved to Ohio without knowing that the woman was pregnant with the second baby. After he moved and without his knowledge, the mother gave birth to the baby and placed it for adoption. This is not the situation contemplated in R.C. 2151.414(E)(11). That statute specifically refers to the involuntary termination of parental rights pursuant to Ohio's statutory scheme for such proceedings, not the loss of parental rights in a proceeding in another state of which the parent was unaware. Therefore, the trial court did not err in failing to consider this factor. FCCS' third assignment of error is overruled.
 {¶ 19} In its first and fourth assignments of error, FCCS contends that the trial court's best interest finding was against the manifest weight of the evidence. Permanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. In re Thompson, supra, at ¶ 48. Therefore, we will review the evidence to determine whether competent, credible evidence supports the trial court's best interest finding.
 {¶ 20} R.C. 2151.414(D)(1) addresses the interaction of the child with his parents, relatives and foster parents. The trial court noted G.B.'s bonded relationships with Lester B., her grandmother, and her foster parents. Competent, credible evidence supports this finding. Testimony from all involved, including G.B.'s foster parents, case workers, and Lester B. himself, indicated that there was a loving and bonded relationship between G.B. and her father. She is excited to see him at visits and enjoys those visits. There was also consistent testimony that there was a loving relationship between G.B. and her foster parents and between G.B. and her grandmother. This factor weighs in favor of the trial court's decision.
 {¶ 21} R.C. 2151.414(D)(2) addresses the custodial wishes of the child. The trial court noted G.B.'s wish to return to her father. This finding is supported by competent, credible evidence. G.B. was represented by counsel who expressed G.B.'s wishes to live with her father. Testimony from FCCS' employees, G.B.'s foster parents, and Lester B. also indicated that G.B. expressed her wishes to live with her father or to continue living with her foster parents. This factor also weighs in favor of the trial court's decision.
 {¶ 22} R.C. 2151.414(D)(3) concerns the custodial history of the child. FCCS has had custody of G.B. since 2000. This factor, coupled with the guardian ad litem's recommendation, weighs against the trial court's decision.
 {¶ 23} R.C. 2151.414(D)(4) takes into account the child's need for a legally secure placement and whether that placement could be achieved without a grant of permanent custody to FCCS. While the trial court found that G.B needed a legally secure placement, it concluded that such placement could be achieved without a grant of permanent custody to FCCS. Competent, credible evidence supports that conclusion. G.B. has been in and out of a number of different foster homes in her time with FCCS and in fact had just been moved to a different foster home at the time of this hearing. We note that her foster parents are not in a position to adopt G.B. In contrast, Lester B. is able to provide a secure placement. Lester B.'s parenting skills were never a major concern in this case. Although testimony from a clinical psychologist indicated some parental concerns, the doctor testified that Lester B. could learn, with appropriate counseling, how to deal with those concerns. He completed most, if not all, of the requirements in his case plan. He completed alcohol and drug counseling, psychological and sexual assessments, mental health counseling, and anger management counseling. He attended sex offender counseling and ultimately passed a polygraph examination indicating that he truthfully denied any involvement with sexually abusing his son. He has consistently visited with his daughter during her years in foster care and expresses his desire to reunite with her. He has a stable home that he has lived in for nine years and lives close to his mother. All involved in this case describe the loving and bonded relationship G.B. has with her father. He testified that he would take part in any counseling necessary for G.B. This is competent, credible evidence supporting the trial court's finding that a legally secure placement can be made with Lester B. This factor also weighs in favor of the trial court's decision.
 {¶ 24} Finally, R.C. 2151.414(D)(5) takes into account whether any of the factors in R.C. 2151.414(E)(7) through (11) apply. Those factors address whether the parent has certain criminal convictions and the parent's ability to care for the child. Lester B. was previously convicted of sexually abusing a minor, a conviction that would fall under R.C.2151.414(E)(7). The trial court expressly addressed this factor in its opinion and, based on the results of the polygraph examination, concluded that this factor did not weigh against G.B.'s best interest. We cannot say that the trial court erred in this regard.
 {¶ 25} After reviewing the factors a trial court must consider in making its best interest determination, we find that the trial court considered all of the necessary factors and that its best interest finding was supported by competent, credible evidence. Accordingly, its judgment dismissing FCCS' motion for permanent custody was not against the manifest weight of the evidence. FCCS' first and fourth assignments of error are overruled.
 {¶ 26} Having overruled FCCS' five assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Brown, P.J., concurs.
Sadler, J. dissents.
[1] Michelle W. did not request custody of her daughter during this proceeding but did support Lester B. in his desire to retain custody. Therefore, only Lester B.'s parental rights are at issue here.
[2] For purposes of R.C. 2151.414(B)(1), G.B. entered the temporary custody of FCCS on April 22, 1999, the day she was adjudicated as a dependent child. R.C. 2151.414(B)(1); In re Decker (Feb. 13, 2001), Athens App. No. 00CA042. FCCS filed its motion for permanent custody almost two years later, on April 13, 2001.