DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating appellant's parental rights and granting permanent custody of her three minor children to the Lucas County Children Services Board ("LCCS"). Appellant, Deanna F., asserts the following assignments of error:
 {¶ 2} "Trial Counsel's representation of appellant fell below an objective standard of reasonableness and was ineffective assistance of counsel.
 {¶ 3} "LCCS failed to present clear and convincing evidence to terminate the parental rights of appellant and the trial court erred in finding that it did so.
 {¶ 4} "The record does not demonstrate that appellant relinquished temporary custody, freely, knowingly and voluntarily with full knowledge of essential facts.
 {¶ 5} "The trial court erred in awarding permanent custody to the state where the court did not find that by clear and convincing evidence that certain criteria set forth in Ohio Revised Code 2151.414 have been met and the court must state those findings and that the court considered each and every item required by statute on the record so it is clear to all parties that the decision is supported by the facts."
 {¶ 6} On December 9, 2002, the LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing in which it sought temporary custody of appellant's children. The agency claimed that appellant had a history of having relationships with men who abused her and, among other things, forced her to take drugs.
 {¶ 7} The complaint further alleged that appellant's son, Donell, was punched in the chest by appellant's most recent boyfriend, Tim T., and that the child received second degree burns on his foot when he attempted to "get out of the way" during an episode of domestic violence. In addition, the complaint asserted that none of the three children, who are all of an age to attend school, had attended school as of December 9, 2002. The complaint also indicated that appellant had no stable housing and no money,[1] and that she and her children were frequently homeless. Finally, the LCCS maintained that the fathers of the three children had no contact with them. Based on the foregoing, the children services agency requested temporary custody of all three minor children.
 {¶ 8} On December 10, 2002, the motion for temporary custody was granted and case plans were formulated. The goal of the initial case plans, as well as a number of subsequent case plans, was the reunification of appellant and her children. On February 19, 2003, the juvenile court entered a judgment finding, by consent of the parties, that appellant's children, Donell, Joshua, and Patty (also known as Pam) were dependent and neglected children. From June 2003 to February 2004, appellant did not visit her children, did not avail herself of the services offered by LCCS, and her whereabouts was unknown.
 {¶ 9} On April 20, 2004, LCCS filed a motion for permanent custody of Donell, Joshua, and Patty. The motion alleged that, despite the services offered to appellant, she had not made any progress and did not comply with her case plan by failing to participate in some of the offered services. The following relevant evidence was adduced at the dispositional hearing on LCCS's motion.
 {¶ 10} Ricky D. was the only father to appear at the hearing. During the proceedings below, he submitted to a DNA test and is the biological father of Joshua. Ricky resides at Northcoast Behavioral Healthcare, a mental facility that treats, among others, patients who have been found not guilty of a criminal offense by reason of insanity. Testimony revealed that Ricky was remanded to the mental health facility in 1992 by the Lucas County Common Pleas Court and has been unable to successfully complete a conditional release. Unless he is able to achieve the goal of conditional release, he will remain in Northcoast Behaviorial Helathcare until July 2017.
 {¶ 11} Ernestine Weirich, a Practical Clinical Counselor, whose clients are mainly children, was the therapist for Donell, Joshua, and Patty. At the dispositional hearing, she testified that Donell has attention deficit hyperactivity disorder and post traumatic stress disorder. Initially, Donell also was unable to relate to others due to the prior lack of appropriate attachment to a caregiver. Weirich noted, however, that at the time of the hearing, Donell's mental condition was "stable." As to Joshua, she stated that he also suffers from post traumatic stress disorder, but is currently doing "wonderfully."
 {¶ 12} Weirich revealed that Patty suffers from post traumatic stress disorder as the result of being raped, at the age of five, by Tim T., who is currently in prison after being found guilty of that offense. The counselor indicated that Patty is very upset because her mother refuses to believe that she was sexually abused by Tim T. In fact, the record of this case reveals that appellant testified on Tim T.'s behalf at his criminal trial and continued to visit him in jail after his conviction.
 {¶ 13} Weirich testified that during the period that their mother disappeared, the children's behavior stabilized. When informed that their mother had returned and wanted to see them, all three children said that they did not want to see her. Subsequently, during visitation, the children began behaving badly, refused to have eye contact with their mother or bond with her, and engaged in role reversal. For these reasons, Weirich believed that it would be in the best interest of the children to award permanent custody to the LCCS.
 {¶ 14} Lori Wilson, the LCCS caseworker who worked with appellant and her children, provided the following information. The services offered to appellant included domestic violence counseling, substance abuse treatment, parenting classes and individual therapy. Appellant's participation in these services prior to her disappearance was minimal. Appellant contacted Wilson twice when she was gone and indicated that she needed a "break" and/or went "on a vacation" to Chicago. Even after she returned to Toledo, appellant did not visit her children until February 2004.
 {¶ 15} Appellant did not begin participating in the services offered by LCCS until after the children services agency filed its motion for permanent custody, approximately 15 months after the children were removed from her care. At the time of the dispositional hearing, appellant had completed some, but not all, of the services provided in her case plan. Specifically, she failed to engage in individual counseling and in an interactive parenting program with her children. Wilson testified, however, that even after completing some of her services, appellant failed to recognize the damage to her children that resulted from her relationship with Tim T. Noting that appellant's "problems are pervasive" and that, for a period of ten years[2] appellant was unable to protect and meet the needs of her children, Wilson also recommended that permanent custody of those children be awarded to LCCS. Additionally, in her report, the children's guardian ad litem recommended that it would be in the best interests of Donell, Joshua, and Patty to award permanent custody to LCCS.
 {¶ 16} On October 1, 2004, the trial court entered a judgment terminating appellant's parental rights and awarding permanent custody of Donell, Joshua, and Patty to LCCS. This appeal followed.
 {¶ 17} For ease of discussion, we shall consider appellant's assignments of error out of order.
 {¶ 18} In her third assignment of error, appellant contends that the record of this case does not demonstrate that she relinquished temporary custody of her children "freely, knowingly, and voluntarily with full knowledge of essential facts." Appellant bases this contention on the testimony of Lori Olender, who was the prosecutor at Tim T.'s trial.
 {¶ 19} The testimony of Olender was offered to show that appellant testified on behalf of Tim T. at his trial for raping appellant's then five year old daughter. It was not offered to demonstrate appellant's consent to an adjudication of dependency and neglect. The latter subject was decided by means of mediation. Thus, the only evidence in the record reflecting that consent is the trial court's judgment entry. There is no evidence in the record upon which we could determine that this consent was not knowing or voluntary. Moreover, the fact that appellant was described as a "slow learner" does not establish that she did not understand the consequences of that consent. Accordingly, assuming, but not deciding, that appellant could raise the adjudication of dependency and neglect in this appeal, appellant's third assignment of error is found not well-taken.
 {¶ 20} Appellant's second and fourth assignments of error relate to the standard that is applied to determine whether a parent's parental rights should be terminated and the permanent custody of his and/or her child should be awarded to a children services agency. Appellant's fourth and second assignments of error shall, therefore, be considered together.
 {¶ 21} In her fourth assignment of error, appellant asserts, in essence, that the trial court's findings regarding the existence of certain conditions listed in R.C. 2151.414(E) are not supported by clear and convincing evidence. Appellant also argues that the trial court committed reversible error because it failed to "set forth specific findings that LCCS presented clear and convincing evidence of the factors contained in [R.C.] 2151.414(E)(1)-(16)." Appellant urges that the facts supporting each finding must be coupled with the specific statutory section in R.C. 2151.414(E). In her second assignment of error, appellant reiterates parts of the arguments made in her fourth assignment of error, but the main thrust of her second assignment of error is that clear and convincing evidence does not support a finding that it would be in the best interest of Donell, Joshua, and Patty to award permanent custody to LCCS.
 {¶ 22} Parents have a civil right to raise their own children. In re: C.W., 104 Ohio St.3d 163, 2004-Ohio-6411, at ¶23 (citation omitted). Therefore, the law must provide parents every allowable procedural and substantive right. Id. (Citation omitted.) As a result, before a juvenile court can terminate parental rights and award permanent custody of a child to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody test set forth in R.C. 2151.414(B).
 {¶ 23} Specifically, the juvenile court must find that clear and convincing evidence establishes that one of the following requisites exists: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999, and that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents, R.C. 2151.414(B)(1)(a); (2) the child is abandoned, R.C. 2151.414(B)(1)(b); (3) the child is orphaned and has no relatives who are able to take permanent custody, R.C. 2151.414(B)(1)(c); or (4) the child was in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. R.C. 2151.414(B)(1)(d).
 {¶ 24} The juvenile court must also find that clear and convincing evidence shows that permanent custody is in the best interest of the child, pursuant to the factors set forth in R.C.2151.414(D). In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 25} In the present case, clear and convincing evidence shows that LCCS had temporary custody of appellant's children for 16 months of a consecutive 22 month period ending on or after March 18, 1999. Consequently, under R.C. 2151.413(D)(1), LCCS was required to file a motion for permanent custody. See In re:C.W., at ¶ 20. In such circumstances, an agency need not prove that "a child cannot be returned to the parents within a reasonable time or should not be returned within a reasonable time." Id. at ¶ 21. See, also, In re: G.B., 10th Dist. No. 04AP-1024, 2005-Ohio-3141, at ¶ 15; In re: Katrina T. and KayleeT., 6th Dist. No. S-03-24, 2004-Ohio-3164, at ¶ 14.
 {¶ 26} The court below did, however, address the issue of whether the children could not be returned to appellant (or their fathers) within a reasonable time or should not be returned. In particular, the juvenile court found that the following conditions existed pursuant to R.C. 2151.414(E): (1) appellant failed demonstrate a lack of commitment to her children by failing to visit them or communicate with them when she was able to do so and by her actions she showed an unwillingness to provide her children with an adequate home; R.C. 2151.414(E)(4); (2) notwithstanding LCCS's reasonable case plans and diligent effort to assist appellant in remedying the conditions that caused the removal of her children from her home, appellant failed to remedy the conditions that caused the children to be placed outside her home, R.C. 2151.414(E)(1); (3) appellant is unwilling, for any reason to provide her children with the basic necessities of life or to prevent them "from suffering physical, emotional or sexual abuse or physical, emotional, or mental neglect," R.C. 2151.414(E)(14); and (4) appellant abandoned her children when she failed to visit them for a period lasting over six months, R.C. 2151.414(E)(10).
 {¶ 27} The court also set forth the necessary facts in its judgment entry to support these findings. In the case before us, the fact that these facts were not all aligned with the specific R.C. 2151.414(E) condition to which each related is not reversible error. See In re: Mark B., Rayna B., and Ryan B.,
6th Dist. Nos. L-04-1167, L-04-1168, 2005-Ohio-1220, at ¶ 109. Thus, we conclude that the trial court's findings on this issue are supported by clear and convincing evidence.
 {¶ 28} With regard to the best interests of the three minor children in this cause, the trial court was required to consider five statutory factors:
 {¶ 29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 34} Here, the court heard testimony disclosing that Donell, Joshua and Patty did not bond with their own mother, but were readily able to bond with their foster mother. Indeed, all three minor children stated that they did not want to visit with their mother. The record also reveals that the children have a close relationship with each other and that LCCS has no plans to separate them; rather, the agency would prefer that the children be adopted as a "unit." The children expressed a desire not to be returned to their mother's care unless the situation changed drastically. Clear and convincing evidence was offered to demonstrate that while there was some change in their mother's lifestyle, that change was too little and too late.
 {¶ 35} As to factors three and four, the record shows, by clear and convincing evidence, that these children were in the temporary custody of LCCS for more than 12 months of a consecutive 22 month period ending on or after March 18, 1999. Further, the family was involved in protective services in Chicago, Illinois. All three minor children have emotional difficulties resulting from their mother's relationship with Tim T., and Donell has attention deficit hyperactivity disorder. Patty, especially, needs a permanent and secure placement where she can recover emotionally from the sexual abuse she suffered as the result of appellant's inability to properly protect and care for her children. Finally, under the fifth factor clear and convincing evidence was offered to support an R.C.2151.414(E)(10) finding that appellant abandoned her children. See R.C. 2151.011(C) ("A child is presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than 90 days, regardless of whether the parents resume contact with the child after that period of 90 days.").
 {¶ 36} For all of the preceding reasons, appellant's second and fourth assignments of error are found not well-taken.
 {¶ 37} In her first assignment of error, appellant contends that she was deprived of effective assistance of trial counsel. Specifically, she claims that trial counsel failed to call witnesses or to present other evidence that supported her case. Appellant also maintains that, in his closing argument, trial counsel failed to point out the positives in her progress made toward reunification with her children and asserts that he pointed out only the negatives.
 {¶ 38} In a juvenile proceeding, we apply the same standard used in a criminal proceeding to determine ineffective assistance of counsel. Jones v. Lucas Cty. Children's Services Bd. (1988),46 Ohio App.3d 85, 86; In re: Keith Lee P., 6th Dist. No. L-031-266, 2004-Ohio-1976, at ¶ 10. This standard requires a showing that (1) counsel's performance was so deficient as to not function as the counsel guaranteed by the Sixth Amendment, and
(2) counsel's errors were prejudicial, that is, there is a reasonable probability that the outcome of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 668,694. Because an attorney is presumed to be competent, appellant bears the burden of proving that her trial counsel was ineffective. Id. Furthermore, due to the presumption of competence, trial counsel's choice of tactics must be given deference. In re Antonio C., 6th Dist. Nos. S-03-011, S-03-012, 2004-Ohio-82, at ¶ 58 (citation omitted).
 {¶ 39} Appellant initially argues that her trial counsel's performance was deficient because he (1) only called one witness to attest to her progress on the completion of the goals enumerated in her case plan; and (2) failed to present testimony as to the number of and the success of appellant's visits with her children while they were in the temporary custody of LCCS; (3) failed to offer witnesses "to explain to the court the commitment required by Appellant" to complete the specified programs; and (4) failed to elicit the fact that appellant was in Chicago for an extended period of time because her mother was ill. Appellant maintains that counsel breached his duty to his client by allowing the hearsay testimony of the caseworker explaining appellant's disappearance to stand.
 {¶ 40} First, the fact that appellant completed, albeit belatedly, most of the services outlined in her case plan was admitted at trial by LCCS. Thus, any alleged deficiency of trial counsel to call other witnesses attesting to appellant's progress did not prejudice her case.
 {¶ 41} Second, it is undisputed that appellant "disappeared" for several months after temporary custody was awarded to LCCS and that she did not visit her children for eight months during this period. Appellant's witness, Ameena Rashad, testified that, after appellant's return to Toledo, she and the Muslim Community Center of Ohio, encouraged and aided appellant in her attempt to regain custody of her children. Rashad testified that she went with appellant every week for visitation. According to Rashad, she was able to see appellant interact with her children both before and after the "official" visitation. She described the interaction as "normal," in that it always included "pictures and drawings and you know hugs and kisses * * *." Rashad also observed that the children missed their mother. Therefore, we can find no deficiency in trial counsel's performance in failing to present other witnesses on the issue of visitation.
 {¶ 42} With regard to the third alleged breach of duty by trial counsel, the testimony of appellant's caseworker and the children's counselor revealed the type of commitment necessary to complete appellant's case plan. Consequently, trial counsel's performance was not deficient in this area.
 {¶ 43} Fourth, the testimony of appellant's caseworker on the rationale for appellant's extended absence was not hearsay because it was the admission of a party-opponent, see Evid.R. 801(D)(2). Moreover, the caseworker did not provide the only explanation for appellant's disappearance. Appellant's witness, Rashad, testified that appellant went to Chicago to visit her mother because she was "concerned" about her. Therefore, we cannot say that appellant's trial counsel's performance was deficient in this regard.
 {¶ 44} Finally, appellant complains that because counsel presented so little evidence on his client's behalf, he breached his duty to his client by not waiving closing argument. According to appellant, trial counsel's closing argument was prejudicial because it dwelled on her purported shortcomings rather than all that she had accomplished.
 {¶ 45} Closing arguments are not evidence State v. Frazier
(1995), 73 Ohio St.3d 323, 338, 1995-Ohio-235. Further, the usual presumption in a bench trial is, unless the record affirmatively reveals otherwise, that the judge considered only relevant, material, and competent evidence in reaching its decision. Statev. Nelson, 8th Dist. No. 81286, 2003-Ohio-559, at ¶ 21 (citation omitted). Here, nothing in the record indicates that the trial court considered anything other than the evidence offered at trial in making its decision to terminate appellant's parental rights and award permanent custody of her children to LCCS. Accordingly, even if her trial counsel discussed negative aspects of appellant's parenting abilities in his closing argument, her case was not prejudiced thereby. Consequently, appellant's first assignment of error is found not well-taken.
 {¶ 46} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs, pursuant to App.R. 24, of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County and for which execution is awarded.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Parish, J. Concur.
[1] The agency later discovered that appellant receives social security payments because she is classified as a "slow learner."
[2] Appellant was also involved with a children services agency when she resided in the city of Chicago.