OPINION
{¶ 1} Shannon Rishforth appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, awarding permanent custody of her son, Jayden Rishforth, to the Montgomery County Children Services (MCCS). Rishforth contends that the trial court's decision to grant permanent custody of Jayden to the MCCS is against the manifest weight of the evidence and is not supported by clear and convincing evidence.
 {¶ 2} We conclude that the trial court did not err in granting permanent custody of Jayden to MCCS, pursuant to R.C. 2151.414(B)(1)(d), because a review of the record shows that Jayden had been in the temporary custody of MCCS for twelve or more months out of a consecutive twenty-two month period, and clear and convincing evidence establishes that an award of permanent custody to MCCS is in Jayden's best interest.
 {¶ 3} Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} On April 4, 2003, the Montgomery County Children Services filed an abused and dependency complaint requesting temporary custody of Shannon Rishforth's son, Jayden. MCCS alleged that Jayden was abused, based upon the facts that on the date of his birth, April 2, 2003, both Shannon and Jayden tested positive for cocaine and Shannon had a history of substance abuse. MCCS also alleged that Jayden was dependent, based upon the fact that Shannon had failed to comply with her case plan for Jayden's half-sibling, which required her to refrain from using illegal substances. Jayden's father is deceased, and Jayden has two half-siblings who are in the custody of their paternal grandmother.
 {¶ 5} On April 4, 2003, MCCS was granted temporary custody of Jayden on an interim basis. In June, 2003, Jayden was found to be abused and dependent. In October, 2003, temporary custody of Jayden was granted to MCCS until April 4, 2004. A case plan was developed in which Shannon was: (1) to maintain housing and employment; (2) to enter into drug treatment, anger management classes, and individual counseling; and (3) to attend parenting skills classes.
 {¶ 6} In January, 2004, MCCS filed a motion for permanent custody. After a hearing, a magistrate granted permanent custody of Jayden to MCCS in May, 2004. The magistrate found, by clear and convincing evidence, that permanent custody would be in Jayden's best interest and that Jayden could not be placed with either of his parents within a reasonable time because he had been in foster care for twelve of the past twenty-two months. The magistrate found that Rishforth did not complete the case plan as directed and that reunification was not a possibility due to Rishforth's incarceration for Aggravated Arson. The magistrate also found that Rishforth never voluntarily entered into any substance abuse treatment that produced results and that she never parented Jayden or any of her children after October, 2002. Rishforth filed objections to the magistrate's decision. The trial court overruled Rishforth's objections and adopted the magistrate's decision as the judgment of the court. From the judgment of the trial court, Rishforth appeals.
 II {¶ 7} Rishforth's sole assignment of error is as follows:
 {¶ 8} "THE TRIAL COURT'S DECISION PERMANENTLY DIVESTING APPELLANT OF HER PARENTAL RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
 {¶ 9} Rishforth contends that the trial court's decision to grant permanent custody of Jayden to the MCCS is against the manifest weight of the evidence and is not supported by clear and convincing evidence.
 {¶ 10} Pursuant to R.C. 2151.414(B)(1)(d), "the court may grant permanent custody of a child to a movant if the court determines . . ., by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that . . . [t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 11} "Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." In re Dylan C. (1997),121 Ohio App.3d 115, 121, 699 N.E.2d 107, citation omitted. "An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof." Id., citation omitted.
 {¶ 12} "When a judgment is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" In re Conner, Montgomery App. No. 18808, 2001-Ohio-1693, 2001 WL 1345955, at *1, citation omitted. "A judgment should be reversed as being against the manifest weight of the evidence `only in the exceptional case in which the evidence weighs heavily against the [judgment].'" Id., citation omitted.
 {¶ 13} Rishforth concedes that Jayden had been in the temporary custody of MCCS for twelve or more months out of the last twenty-two months, but contends that there is not clear and convincing evidence that permanent custody of Jayden to MCCS is in his best interest.
 {¶ 14} R.C. 2151.414(D) provides that "[i]n determining the best interest of a child at a hearing * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 20} The record shows, and Rishforth concedes, that at the time of the hearing Jayden was twelve and a half months old and had been in the care of MCCS since he was two days old. Therefore, Jayden had been in the temporary custody of MCCS for twelve or more months out of a consecutive twenty-two month period, consistent with R.C. 2151.414(D)(3). In addition, the trial court found that permanent custody of Jayden to MCCS was in Jayden's best interest because Rishforth failed to show "any motivation prior to her incarceration to become an appropriate parent" to Jayden and Jayden deserved "the opportunity to be placed in a safe, stable and permanent home that his mother has never been able to provide for him." We agree.
 {¶ 21} The record shows that Rishforth failed to meet the objectives of her case plan. Based on Rishforth's case plan, she was: (1) to maintain housing and employment; (2) to enter into drug treatment, anger management classes, and individual counseling; and (3) to attend parenting skills classes. Christine Mulcahy, the MCCS caseworker who worked on Rishforth's case plan, testified that Rishforth lost her housing and that she last had a job in August or September of 2003. Regarding drug treatment, Mulcahy testified that Rishforth and Jayden tested positive for cocaine at Jayden's birth and that Rishforth continued to use drugs prior to her incarceration. Mulcahy testified that although Rishforth did successfully complete the six week Bridges program, it was an outpatient program. Mulcahy testified that she was concerned that Bridges was not a sufficiently intensive program and that she had referred Rishforth back to treatment in an inpatient program. Mulcahy testified that Rishforth attended one meeting, but did not follow through with the program. Mulcahy also testified that Rishforth's substance abuse adversely affects her ability to parent.
 {¶ 22} Regarding anger management classes and individual counseling, Mulcahy testified that Rishforth did attend counseling, but that she terminated the counseling. Mulcahy stated that she requested that counseling be continued because the issues were not resolved, but Rishforth did not follow through. Mulcahy did state that the case plan objective regarding parenting skills had been completed.
 {¶ 23} Although Rishforth began working on case plan objectives when she entered the Monday program, the Monday program was involuntary and in lieu of prison. Prior to that point, Rishforth made no effort to voluntarily work on her major case plan objectives, including maintaining housing and employment and entering into drug treatment, anger management classes, and individual counseling. Based on the record, we agree with the trial court that Rishforth has failed to show "any motivation prior to her incarceration to become an appropriate parent" to Jayden.
 {¶ 24} We also agree with the trial court that Jayden deserves "the opportunity to be placed in a safe, stable and permanent home that his mother has never been able to provide for him." Jayden had been in foster care for the first twelve and a half months of his life, since he was two days old. He had never resided with Rishforth or been parented by Rishforth. Rishforth had failed to visit Jayden on a regular basis. Mulcahy testified that Rishforth missed appointments to visit Jayden in October, November, and December of 2003, out of fear of being arrested on outstanding warrants. Mulcahy also testified that Rishforth missed an appointment during the period of time between being released from jail and entering the Monday program. The record shows that Rishforth entered the Monday program in February, 2004, but was not due to be released until July, 2004. Mulcahy testified that none of Rishforth's relatives were able or willing to care for Jayden, and that Jayden's current foster family was considering adopting Jayden if permanent custody was granted to MCCS.
 {¶ 25} Based on the foregoing, we conclude that there is clear and convincing evidence that awarding permanent custody of Jayden to MCCS is in Jayden's best interest.
 {¶ 26} Rishforth also contends that the trial court erred in finding that Jayden could not be placed with either parent within a reasonable time pursuant to R.C. 2151.414(B)(1)(a).
 {¶ 27} Pursuant to R.C. 2151.414(B)(1)(a), "the court may grant permanent custody of a child to a movant if the court determines . . ., by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that . . . [t]he child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 28} However, "[i]t is the trial court's role to decide which, if any, of the four circumstances [described in R.C. 2151.414(B)(1)] apply based upon the evidence presented at the hearing." In re G.B., Franklin App. No. 04AP-1024, 2005-Ohio-3141, at ¶ 15. Although the trial court did find that Jayden could not be placed with either parent within a reasonable time, it also found that Jayden had been in foster care for twelve or more months out of the last twenty-two months, consistent with R.C. 2151.414(B)(1)(d). As noted above, the record establishes that Jayden had been in MCCS's temporary custody for more than twelve months out of a consecutive twenty-two month period. Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in the temporary custody of a children services agency for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, it is not necessary to engage in the R.C. 2151.414(B)(1)(a) analysis of whether the child can or should be placed with either parent within a reasonable time. See id.
 {¶ 29} Rishforth contends that the trial court erred in finding that MCCS made reasonable efforts to reunite Jayden with her.
 {¶ 30} Before awarding permanent custody to MCCS, the trial court was required to find, by clear and convincing evidence, that MCCS made reasonable efforts to reunify Jayden with Rishforth or that such efforts would be futile. See In re Secrest, Montgomery App. No. 19378, 2002-Ohio-7094, at ¶ 12. R.C. 2151.419(A)(1) provides that "the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts." "Reasonable efforts are described as being a good faith effort which is `an honest, purposeful effort, free of malice and the desire to defraud or to seek an unconscionable advantage.'" In reSecrest, at ¶ 12, citations omitted. "The issue is not whether [the agency] could have done more, but whether it did enough to satisfy the `reasonableness' standard under the statute." Id., citation omitted.
 {¶ 31} The record shows that MCCS worked with Rishforth to ensure that she understood the case plan objectives and what she needed to do to complete them. Mulcahy testified that she made several referrals to various programs to address Rishforth's substance abuse, anger issues, and need for individual counseling. Muclahy also made a referral to The Job Center to address Rishforth's need for employment. The record shows that Rishforth failed to take advantage of any of these referrals to complete her case plan objectives. Muclahy arranged for Rishforth to visit with Jayden, but Rishforth missed several appointments. We conclude that MCCS made reasonable efforts to reunify Rishforth with Jayden, but Rishforth failed to respond to these efforts and chose not to meet her case plan objectives.
 {¶ 32} We conclude that the trial court's decision to grant permanent custody of Jayden to the MCCS is supported by clear and convincing evidence and is not against the manifest weight of the evidence.
 {¶ 33} Rishforth's sole assignment of error is overruled.
 III {¶ 34} Rishforth's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Grady, JJ., concur.