**[Cite as *In re L.C.*, 2023-Ohio-731.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: L.C. & J.S. | : | |
| | : | |
| | : | C.A. Nos. 2022-CA-77; 2022-CA-78 |
| | : | |
| | : | Trial Court Case Nos. 20210313; 20210314 |
| | : | |
| | : | (Appeal from Common Pleas Court-Juvenile Division) |
| | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on March 10, 2023

. . . . . . . . . .

IAN A. RICHARDSON, Attorney for Appellee, Clark County Department of Job and Family Services

GARY C. SCHAENGOLD, Attorney for Appellant, Mother

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Appellant A.C. ("Mother") appeals from judgments of the Clark County Court of Common Pleas, Juvenile Division, granting the Clark County Department of Job and Family Services (hereinafter "CCDJFS") permanent custody of her minor children, L.C.

and J.S.   For the following reasons, we affirm.

### I.    Facts and Procedural History

{¶ 2} CCDJFS first became involved with this family in April 2021 due to reports that the children were missing school.   Upon meeting with Mother, caseworkers became concerned about her mental health.   On May 28, 2021, CCDJFS filed a complaint alleging that the children were dependent because Mother had mental health issues which caused her to be unable to provide for the basic needs of the children.   Specifically, the agency alleged that the children were not attending school and that Mother was not feeding them.

{¶ 3} In July 2021, the children were adjudicated dependent and placed in the temporary custody of CCDJFS.   A case plan was implemented to reunify Mother with the children.   The case plan required Mother to obtain and maintain stable housing and employment; to undergo a mental health assessment as well as a drug and alcohol assessment and to follow all treatment recommendations; to submit to random drug screenings; and to maintain regular visitation with the children.

{¶ 4} On April 20, 2022, CCDJFS filed a motion seeking permanent custody of the children.   A hearing was conducted on August 29, 2022.   Evidence adduced during the hearing demonstrated Mother had failed to obtain appropriate housing.   There was evidence that she had obtained employment as of June 2022, but no evidence was presented to demonstrate that she had remained employed.   Evidence was also presented that Mother had failed to comply with mental health or substance abuse

treatment despite admitting to using methamphetamines, fentanyl, THC and Bupropion. Indeed, the record demonstrated that when Mother did submit to a drug screen, she tested positive. Most significantly, the evidence demonstrated that Mother failed to visit the children at any time after December 2021.

{¶ 5} Following the hearing, the court found Mother had abandoned the children and that an award of permanent custody to CCDJFS was in the best interest of the children.

{¶ 6} Mother appeals.

## II.    Permanent Custody

{¶ 7} Mother's sole assignment of error states as follows:

THE TRIAL COURT ERRED IN GRANTING THE MOTION OF CLARK

COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (CCDJFS)

FOR PERMANENT CUSTODY

{¶ 8} Mother asserts that the trial court abused its discretion by awarding permanent custody of her children to CCDJFS. She argues the evidence demonstrated she had "sufficiently started to make progress on her Case Plan and that the Agency should have considered a second extension of temporary custody rather than pursuing permanent custody."

{¶ 9} "[P]arents who are suitable persons have a 'paramount' right to the custody of their minor children." (Citations omitted.) *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). This "fundamental interest of parents is not absolute, however." *In*

*re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. The "extreme disposition" of permanently terminating parental rights "is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).

{¶ 10} As pertinent here, R.C. 2151.414(B)(1) states that:

* * * [T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

* * *

(b) The child is abandoned.

{¶ 11} " 'An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof.' " *In re Rishforth*, 2d Dist. Montgomery No. 20915, 2005-Ohio-5007, ¶ 11, quoting *In re Dylan C.*, 121 Ohio App.3d 115, 121, 699 N.E.2d 107 (6th Dist.1997). Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), syllabus.

{¶ 12} R.C. 2151.011(C) provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." In the case before us, Mother has not rebutted this presumption by giving any reasonable explanation for her failure to visit or contact the children. Thus, there was sufficient evidence to meet the clear and convincing standard in connection with the finding that Mother had abandoned the children.

{¶ 13} Because the children had been abandoned, the trial court's next and final determination was whether a grant of permanent custody to the agency was in the children's best interest. R.C. 2151.414(D)(1) sets forth the following factors to be considered in deciding a child's best interest:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month

period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 14} The record demonstrates that the children have been integrated into their foster home. There was no evidence indicating any bond between Mother and the children. The CASA worker assigned to the case recommended the agency be granted permanent custody. Further, the evidence demonstrated the children were in need of a legally secure placement and that such a placement could not be achieved without a grant of permanent custody to CCDJFS. Mother did not substantially comply with her case plan. Despite appropriate referrals by CCDJFS, she failed to obtain or maintain suitable housing, and there was no evidence that she had maintained employment. She further failed to engage in mental health and substance abuse treatment. Finally, when Mother did submit to random drug testing, she consistently tested positive.

{¶ 15} Our review of the record indicates that the trial court's decision was supported by ample evidence to meet the clear and convincing standard of proof. Accordingly, Mother's sole assignment of error is overruled.

### III.        Conclusion

**{¶ 16}** Mother's sole assignment of error being overruled, the judgments of the trial court are affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HUFFMAN, J., concur.